No. 49,690

MARVIN C. WHITE, *Appellant,* v. GOODVILLE MUTUAL CASUALTY COMPANY, *Appellee.*

(596 P.2d 1229)

Opinion filed July 14, 1979.

*Harry L. Najim,* of Wichita, argued the cause and was on the brief for appellant.

*William Tinker, Jr.,* of McDonald, Tinker, Skaer, Quinn and Herrington, of Wichita, argued the cause and *Stanley J. Riney,* of the same firm, was with him on the brief for appellee.

*M. Ralph Baehr,* of Render & Kamas, of Wichita, filed a brief *amicus curiae* for The Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by Marvin C. White from an order of the district court dismissing his case on the grounds the petition failed to state a claim upon which relief could be granted.

The facts are simple. Appellant's automobile and an automobile owned and driven by Joe Ackah-Yensu collided on January 7, 1977. Appellee, Goodville Mutual Casualty Company, was the insurance carrier for Mr. Ackah-Yensu, and a policy of liability insurance was effective on the collision date.

Appellant filed suit on July 11, 1977, in the district court of Sedgwick County, Kansas, seeking to recover $1,239.00 in damages from Joe Ackah-Yensu. Mr. Ackah-Yensu had moved in the meantime and appellant was unable to obtain personal service on him or ascertain his whereabouts. Appellant then instituted this

action on August 26, 1977, against the insurance carrier for recovery of property damages, attorney fees and costs.

Appellee filed a motion to dismiss this latter action upon the grounds it failed to state a claim upon which relief could be granted. The district court of Sedgwick County, Kansas, sustained the motion concluding that Kansas law did not permit an injured party to maintain a direct action against the insurer of a negligent motorist. Appellant appeals from this dismissal requesting this court to adopt a direct action policy and readily concedes that no such action has heretofore been recognized in Kansas.

The sole issue on appeal is whether an injured party may maintain an action directly against the insurer of an alleged negligent motorist.

The prevailing general rule is that, unless provided by statute or the insurance contract itself, an automobile insurance company may not be made an original party to a lawsuit against its insured. 7 Am. Jur. 2d, Automobile Insurance § 210.

The long-standing rule in Kansas is that the mere mention of defendant's insurance in an automobile collision case is reversible error. *Smith v. Blakey, Administrator,* 213 Kan. 91, 515 P.2d 1062 (1973); *Bott v. Wendler,* 203 Kan. 212, 453 P.2d 100 (1969). Kansas, by statute, does allow for disclosure of insurance during discovery; however, the statute specifically provides that even though discoverable the information so obtained is not thereby made admissible in evidence. K.S.A. 60-226(*b*)(2).

The question of a direct action against an insurer either by way of joinder with the insured as a defendant or by action against the insurer alone has been the subject of much writing and speculation. See generally, Porter, *Compulsory Motor Vehicle Liability Insurance: Joinder of Insurers as Defendants in Actions Arising Out of Automobile Accidents,* 14 Wake Forest L. Rev. 200 (1978); Note, *Direct Actions Against Insurance Companies: Should They Join the Party?,* 59 Cal. L. Rev. 525 (1971); Rudser, *Direct Actions Against Insurance Companies,* 45 N.D. L. Rev. 483 (1969); Schwab, *The Louisiana Direct Action Statute,* 22 La. L. Rev. 243 (1961); Degnan, *Semi-Direct Action Against Liability Insurers, Current Problems,* 13 Vand. L. Rev. 871 (1960); Note, *Permissive Joinder as a Substitute for Excluding Evidence that Defendant is Insured,* 59 Yale L. J. 1160 (1950); Appleman, *Joinder of Policy-*

*holder and Insurer as Parties Defendant,* 22 Marq. L. Rev. 75 (1938).

Appellant's principal argument is that the Kansas Automobile Injury Reparations Act, K.S.A. 1978 Supp. 40-3101 *et seq.,* should be interpreted to permit the right of direct action. Liability insurance coverage is now mandatory under this Act as a condition precedent to the registration and operation of a motor vehicle in Kansas. This requirement is the basis of appellant's contention that a direct action against the insurer is permissible. Appellant attempts to support his argument by previous decisions of this court authorizing a direct action against insurers of public motor carriers under K.S.A. 1978 Supp. 66-1,128. *Sterling v. Hartenstein,* 185 Kan. 50, 341 P.2d 90 (1959); *Fitzgerald v. Thompson,* 167 Kan. 87, 204 P.2d 756 (1949); *Twichell v. Hetzel,* 145 Kan. 139, 64 P.2d 557 (1937); *Dunn v. Jones,* 143 Kan. 218, 53 P.2d 918 (1936).

This argument requires a comparison and analysis of K.S.A. 1978 Supp. 40-3107(*b*) and K.S.A. 1978 Supp. 66-1,128 including the judicial construction of the latter. The pertinent parts of the statutes are set out below:

K.S.A 1978 Supp. 40-3107:

"Every policy of motor vehicle liability insurance issued by an insurer to an owner residing in this state shall:

. . . .

"(*b*) *insure the person named therein and any other person, as insured,* using any such vehicle with the expressed or implied consent of such named insured, *against loss from the liability imposed by law* for damages arising out of the ownership, maintenance or use of any such vehicle within the United States of America or the Dominion of Canada, subject to the limits stated in such policy;" (Emphasis supplied.)

K.S.A. 1978 Supp. 66-1,128:

"(*a*) Except as provided in subsection (*b*), no certificate, permit, or license shall be issued by the state corporation commission to any 'public motor carrier of property,' 'public motor carrier of passengers,' 'contract motor carrier of property or passengers,' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by the state corporation commission, a liability insurance policy, in such reasonable sum as the commission may deem necessary to adequately protect the interest of the public with due regard to the number of persons and amount of property involved, but in no event shall such sum be less than five thousand dollars ($5,000) for loss to property of others in any one accident, twenty-five thousand dollars ($25,000) for personal injury or death to any one person in any one accident, and fifty thousand dollars ($50,000) for injury or death to two or more persons in any one accident, *which*

*liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier."* (Emphasis supplied.)

K.S.A. 1978 Supp. 40-3107(*b*) mandates coverage "against loss from the liability imposed by law," whereas K.S.A. 1978 Supp. 66-1,128 mandates coverage which shall bind the carrier to "pay compensation for injuries . . . and . . . damage . . . resulting from the negligent operation of such carrier."

Our decisions which allow a direct action against the insurance carrier under 66-1,128 were based upon the intent of the legislature as determined from the statute. As we have no statute specifically allowing such direct actions, any such determination under 40-3107 must also be found to have been the intent of the legislature.

While liability insurance policies and indemnity insurance policies are both referred to as liability policies, the terms liability and indemnity are often confused and at times ignored. The distinction between the terms, however, is necessary in reviewing our prior decisions and in determining the legislative intent behind the statutes. Generally, where the policy is to *indemnify* the insured against actual loss, no liability of the insurer arises to anyone until a judgment has been obtained and the insured has paid it and thereby sustained a loss although by practice, decision, statute or the policy itself the actual payment by the insured is no longer required to establish an obligation on the insurer. Prior to a final judgment there is no duty on the part of the insurer to make any payment and it may not be sued alone or as a codefendant. If the policy is considered to be a contract of *liability* insurance then primary liability is upon the insurer and therefore an injured party may sue the insurance company alone or join it in a suit against the insured. 12 Couch on Insurance 2d § 45:766.

The allowance of a direct action against an insurer under 66-1,128 was first approved in *Dunn v. Jones*, 143 Kan. 218:

"The legislature might have provided that no liability should attach to the insurer until judgment had been rendered against the motor carrier for damages resulting from his negligence. It did not do so. In the Blanton case the terms of a policy were considered, and it was held the policy was a liability policy. In this instance, the terms of the statute are considered. It required a liability policy, and the following, from the opinion in the Blanton case, is pertinent:

'These provisions show that the obligations of the contract rested upon the insurer from the time the accident occurred down until the liability resulting from them was settled and discharged.' . . .

"Obligation to pay compensation accruing at the time of accident resulting in injury is enforceable·by the injured person by action in the usual way." p. 223.

However, the policy was found to be one of *liability* only when read in light of the statute. The label attached to the policy is irrelevant; it is the nature of the policy cast in the light of the statute under which it was issued that controls its classification. *Burks v. Aldridge,* 154 Kan. 731, 735, 121 P.2d 276 (1942).

In *Sterling v. Hartenstein,* 185 Kan. 50, the court considered the holding in *Dunn v. Jones* and, in doing so, stated:

"The statute there construed provided not merely for a *liability insurance policy,* prior to issuance of a certificate or license, *but specified with some particularity the kind of liability insurance to be provided.* The statute required insurance which 'shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such [motor] carrier.' Construing that language in the light of other provisions, and of the purpose and intent of the whole Motor Carrier Act relating to the use of the public highways for business and commercial purposes, it was held that *the legislature intended to require a policy which would provide direct liability to injured persons* without regard to judgment against the insured motor carrier. It was further held that the terms of the statute must be read into the policy. In other words, the insurance company must be held to have accepted the terms of the statute under which it furnished the policy to the motor carrier." 185 Kan. at 55.

Policies issued pursuant to K.S.A. 1978 Supp. 40-3101 *et seq.,* are required to insure the person named therein against loss from the "liability imposed by law." This phrase as used in automobile liability policies is ordinarily one of indemnification and construed as meaning liability imposed in a definite sum by a final judgment against the insured. See 25 Words and Phrases 92.

K.S.A. 1978 Supp. 40-3107 specifically provides that the provisions of the statute are read into and are a part of any policy issued thereunder. In construing ordinances requiring liability insurance in various situations, we have consistently held that such a requirement does not authorize a direct action against the insurance carrier. *Bayless v. Bayless,* 193 Kan. 79, 392 P.2d 132 (1964); *Lang v. Underwriters at Lloyd's,* 157 Kan. 314, 139 P.2d 414 (1943); *Burks v. Aldridge,* 154 Kan. 731. See also *Carter v. Insurance Co.,* 76 Kan. 275, 91 Pac. 178 (1907).

After a careful comparison and analysis of the language used by

the legislature in 66-1,128 and 40-3107, we conclude that the legislature did not intend by its enactment of K.S.A. 1978 Supp. 40-3101 *et seq.,* to authorize a direct action against the insurance carrier of an alleged negligent motorist. If it had so intended, it could have provided for the same in simple language or could have specified a direct liability as in 66-1,128.

Appellant next contends that this court should adopt a policy allowing direct actions against the insurance carrier on the theory that the injured party is a third-party beneficiary of the insurance contract and on public policy considerations. Appellant relies principally, if not solely, on *Bussey v. Shingleton,* 211 So. 2d 593 (Fla. Dist. Ct. App. 1968), *aff'd Shingleton v. Bussey,* 223 So. 2d 713 (Fla. 1969). It appears that Florida is the only state which has permitted a direct action against the insurer absent specific statutory authority or compulsory insurance laws construed to authorize the same. Appellant asks this court to follow the "enlightened" view adopted in Florida. Even if we were to adopt the Florida rule, which we decline to do, it would be of no consolation to appellant. Florida has consistently held that the insured is an indispensable party and only allows joinder of the insurer as a codefendant. The most that can be said of *Bussey* is that it allows the insurer to be joined with the insured as a co-party and therefore it is not authority for the position argued by appellant. We have considered carefully the arguments of appellant and the Kansas Trial Lawyers Association in its *amicus* brief and do not find their arguments persuasive.

If a direct action in an automobile collision case is to be allowed against an insurance carrier, either as the sole defendant or as a codefendant with the insured, the legislature must establish such right.

The judgment is affirmed.