Richard Anthony DAIGLE, Appellant,

v.

Steve Allen HAMILTON and American Deposit Insurance Company, an Oklahoma corporation, Appellees.

No. 67212.

Supreme Court of Oklahoma.

Oct. 17, 1989.

---

**41.** *Peters v. Golden Oil Co.,* 600 P.2d 330, 331 (Okla.1979).

**42.** *Id.*

Larry R. McManus, Oklahoma City, for appellant.

Daniel J. Hoehner, Tom L. King, Jeff R. Beeler, King, Roberts & Beeler, Oklahoma City, for appellee, American Deposit Ins. Co.

SIMMS, Justice:

This appeal arises from a negligence action wherein appellant, Richard Anthony Daigle, brought suit against Steve Allen Hamilton for injuries allegedly resulting from an automobile accident in 1984.

Although Mr. Hamilton was the named defendant on the petition, appellant never obtained service of process upon him. The appellant filed an amended petition which named appellee, American Deposit Insurance Company (American), as a defendant. The amended petition alleged that American was responsible to the appellant because American was Mr. Hamilton's insurer under an insurance contract. Upon being served with the petition and summons, American answered by denying the allegations and setting forth various defenses. American subsequently filed a motion to dismiss on the grounds that Oklahoma does not recognize a direct action against an insurance company in this situation. The trial court granted the motion to dismiss.

The Court of Appeals reversed and remanded, holding that this Court, in *Tidmore v. Fullman,* 646 P.2d 1278 (Okl. 1982), recognized a direct or joint right of action against the insurer of a motorist who injures a third person. We grant certiorari to the Court of Appeals, vacate the Court of Appeals opinion and affirm the trial court.

The sole question presented is whether an injured party may maintain a direct action against an unserved tortfeasor's insurance company. It is a question of first impression in this state, and to answer it we must look to other jurisdictions which have considered the question.

The majority of jurisdictions have ruled that a defendant's insurer cannot be directly sued by a plaintiff. 12A Couch on Insurance 2d (Rev Ed) § 45:784; Rudser, *Direct Actions Against Insurance Companies,* 45 N.D.L.Rev. 483 (1969).[1] The reasons given for the prohibition, besides statutory directive, include public policy, prohibition by judicial decision, lack of privity between the injured plaintiff and the insurer, misjoinder of the tort action and the action on the contract, and the enforcement of the "no-action" clause in the policy. *Id.,* 45 N.D.L.Rev. at 483–84. However, some jurisdictions have authorized direct actions by enacting legislation calling

---

1. Oklahoma appears to adhere to the majority rule because we stated in *Aetna Casualty & Surety Co. of Hartford, Conn. v. Gentry,* 191 Okl. 659, 132 P.2d 326, 331 (1940) that "[i]t may be assumed without specific analysis of the fore-going cases that under the law of this state a primary and several liability as distinguished from a joint liability or secondary liability to an injured person is not recognized to exist."

for a direct action under particular circumstances.[2] The Oklahoma Legislature has not enacted a general direct action statute, but has passed a statute which allows a joint action against motor carriers and their insurers in some instances.

Furthermore, we interpreted Oklahoma's uninsured motorist statute, 36 O.S.1981, § 3636, to allow a direct action against the injured party's insurer. In *Keel v. MFA Insurance Company*, 553 P.2d 153, 158 (Okl.1976), this Court set forth those circumstances in which an injured party may bring suit for damages where the tortfeasor is uninsured or underinsured and the plaintiff has uninsured motorist coverage with an insurance company. These circumstances are as follows:

(1) He may file an action *directly* against his insurance company without joining the uninsured motorist as a party defendant and litigate all of the issues of liability and damages in that one action.

(2) He may file an action *joining* both the uninsured motorist and the insurance company as party defendants and litigate all issues of liability and damages in one action.

(3) He may file an action against the uninsured motorist without joining the insurance company as a party defendant, but give adequate notice of the filing and pendency of such action to the insurance company so that it may take whatever action it desires, including intervention.

(4) He may file an action against the uninsured motorist and give no notice to the insurance company. *Tidmore*, 646 P.2d at 1280–281, quoting from *Keel*. (emphasis added)

We authorized the injured party to bring the action directly against his insurer because the insurance company had a contractual obligation to provide coverage to its insured whenever an underinsured motorist injured the insured. See: *Associated Indemnity Corporation v. Cannon*, 536 P.2d 920, 923 (Okl.1975).

We have recognized joint actions against motor carriers and their insurers under a statute requiring the carrier to file a liability insurance policy or bond with the Corporation Commission before a permit to do business in Oklahoma is issued. *Enders v. Longmire*, 179 Okl. 633, 67 P.2d 12 (1937). In *Enders*, we construed 47 O.S.Supp.1933, § 169 to allow a *joint* action against both the tortfeasor motor carrier and its insurer because of the following language:

such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable ... 67 P.2d at 14.

We upheld our earlier ruling that this language created a direct liability of the insurance company to the injured person because the insurer "is liable for the injuries resulting from the operations of the motor carrier, not by reason of its bond [or policy], but by reason of the statute." *Jacobsen v. Howard*, 164 Okl. 88, 23 P.2d 185, 187 (1933) (construing the statute replaced by Section 169 when the legislature amended the code). *See also Temple v. Dugger*, 164 Okl. 84, 21 P.2d 482 (1933); *Denco Bus Lines, Inc. v. Hargis*, 204 Okl. 339, 229 P.2d 560 (1951). Additionally, we have allowed joint actions under the same theory where a city ordinance required insurance bonds for taxicab companies and bus companies much like Section 169 does. *Safeway Cab Co. v. McConnell*, 181 Okl. 612, 75 P.2d 884 (1938). Other than these situations, this Court has not recognized the right to a direct action by a third party against the insurer of a covered tortfeasor. Furthermore, we did not approve of this action in *Tidmore, supra*.

*Tidmore* involved an action brought by an injured third party against the alleged tortfeasor and the plaintiff's uninsured motorist coverage carrier. We agreed with

**2.** *See* Louisiana—La.Rev.Stat.Ann. § 22:655 (B)(1) (West 1989); Puerto Rico—P.R.Laws Ann. tit. 26 § 2003(1) (1976); Rhode Island—R. I.Gen.Laws Anno. § 27–7–2 (1979); Wis.Stat. Ann. 632.24 (West 1979). The Rhode Island statute specifically provides for a direct action under the facts of this case, i.e. when service of process is returned "not found."

the trial court that both defendants were proper parties under *Keel.* However, we reversed the trial court's decision to allow the names of the insurance carriers of both the plaintiff and the defendant tortfeasor and the terms of their respective policies to be divulged to the jury. We concluded in *Tidmore* that, as a matter of law, it is prejudicial for the existence of liability insurance coverage to be revealed to the jury, unless the action is directly against the *injured party's insurer.* This holding which dealt solely with what may be revealed to the jury was the crux of our decision. The remainder of the opinion was dicta supportive of this holding. It is from this dicta that the appellant gleaned the existence of a right to a direct action against the insurer of the alleged tortfeasor. The appellant's argument comes from the following passage:

> On the other hand, the insurer under a *compulsory* insurance policy may be joined as a defendant with the insured in an action by an injured third person, generally, on the theory that under *statutes requiring and controlling compulsory insurance*, a direct or joint right is created in favor of the injured person against both the insured and the insurer. And our Court has on many occasions held that where a motorist is required by statute or ordinance to file a policy of liability insurance to protect the interests of the public or injured persons, though not expressly giving to them a direct benefit under the policy, the joinder of the insurer and the insured in the same action is permitted. *Tidmore,* 646 P.2d at 1282–282. (emphasis added) (citations omitted)

The appellant argues that "the statutes requiring and controlling compulsory insurance" which *Tidmore* mentions are the ones found at 47 O.S.Supp.1982, § 7–600 et seq, specifically § 7–601(B). We disagree. The above-quoted passage mirrors the language found in 20 A.L.R.2d 1097 (1951), on pages 1102 and 1120. In fact, *Tidmore* cites this annotation and refers to fifteen Oklahoma Supreme Court cases listed therein. Each of the cases listed involved the motor carrier statute or a city ordi-

nance requiring insurance bonds to be filed. At the time of *Tidmore,* Section 7–601(B) was not yet in effect. Moreover, all of the cases cited or referred to in *Tidmore* involved either a *joint* action against a motor carrier and its insurer or a motorist directly or jointly suing his uninsured motorist insurer. Therefore, we do not find that the holding of *Tidmore* approves a direct action in all compulsory insurance situations, but rather approves a joint action in those cases involving motor carriers under the applicable statute or city ordinance.

This interpretation is supported by other language following the passage which the appellant embraces. In distinguishing *Tidmore* from a Kansas case, we stated:

> The plaintiff here seeks to place before the jury the name of the underinsured defendant's insurer and the terms of the underinsured defendant's policy. Here, the underinsured defendant's insurer is not a party to the suit. *Neither is there a contractual right on the part of the plaintiff to maintain a claim against the underinsured defendant's insurer.* 646 P.2d at 1282 (emphasis added).

Thus, we recognized that a plaintiff does not have the same contractual right to maintain a claim against an alleged tortfeasor's insurer as he does against his uninsured motorist insurer. Clearly, *Tidmore* does not stand for the proposition that such a right is created merely by the passing of a compulsory insurance statute for all motorists.

Moreover, a fairly recent decision of the Kansas Supreme Court addressed the precise issue before us. In *White v. Goodville Mutual Casualty Co.*, 226 Kan. 191, 596 P.2d 1229 (1979), the appellant argued that because Kansas had a statute making liability insurance coverage mandatory as a condition precedent to the registration and operation of a vehicle in Kansas, direct actions against an alleged tortfeasor's insurance company were permissible just as such actions are allowed under a Kansas statute requiring motor carriers to file an insurance bond or policy before the state corporation commission grants a permit to

operate to the motor carrier. The court compared the motor carrier statute to the mandatory coverage statute and emphasized that the legislative intent was to allow direct actions against motor carrier insurers because the statute states that *"liability insurance shall bind the obligers thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier."* 596 P.2d at 1231. (emphasis in original) *See also* K.S. A.1978 Supp. 66–1,128.

The above-quoted language is almost identical to the language contained in Oklahoma's motor carrier coverage statute, 47 O.S.1981, § 169, which we held allows direct actions against the insurer of a motor carrier in *Enders, supra,* under the 1933 version of the statute.[3] Furthermore, the Kansas Supreme Court's interpretation of the statute and its creation of a direct action is similar, if not identical, to our interpretation of Section 169.

The court in *White* further analyzed K.S. A.1978 Supp. 40–3107(b), the relevant provision in the Kansas Automobile Injury Reparations Act which establishes mandatory liability coverage for all vehicles registered in Kansas. The court determined that the legislature did not intend for the Act, and specifically the statute, to authorize a direct action against the insurer of an alleged negligent motorist. The court's conclusion, and reasoning thereto, stemmed from the legislature's failure to specify direct liability as they did in the motor carrier statute, and from the determination that 40–3107 is a statute requiring a policy of *indemnity,* whereas 66–1,128 requires a *liability* policy.[4] The court concluded that 40–3107 required only an indemnity policy because the statute requires every policy to insure "against loss from the liability imposed by law." The phrase "liability imposed by law," when used in automobile liability policies, is ordinarily construed to

mean "liability imposed in a definite sum by a final judgment against the insured." 596 P.2d at 1232. *See also* 25 Words and Phrases 92; 12A Couch on Insurance 2d (Rev Ed) § 45:812. In other words, the insurer is to indemnify the insured once liability is imposed upon the insured by a final judgment.

Title 47 O.S.1981, § 7–601, likewise, calls for a policy or "vehicle security for the payment of loss resulting from the *liability imposed by law* for bodily injury, death and property damage." (emphasis added) We find the reasoning of the court in *White* very persuasive, and we also find that this phrase refers to a policy of indemnification. We also note that conspicuously absent from Oklahoma's Compulsory Liability Insurance Law[5] is a provision similar to that found in Section 169 authorizing an action, be it joint or direct, against the alleged negligent motorist's insurer. We, therefore, find that the legislature, in enacting the Compulsory Insurance Law did not intend to create a direct action against the insurer in the circumstances of this case. Rather, the legislature passed a law requiring motorists to obtain security in the nature of indemnification to cover losses incurred by others as a result of the motorist's negligence.

We have never before recognized the right of a plaintiff to bring a *direct* action against the insurer of an alleged tortfeasor absent statutory edict. We do not recognize this right now.

Accordingly, the opinion of the Court of Appeals is VACATED; the decision of the District Court of Oklahoma County is AFFIRMED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

---

3. See the relevant statutory language set forth *supra.* The language of 47 O.S.Supp.1933, § 169 relevant to this case has not materially changed since its enactment. Thus 47 O.S.1981, § 169, for purposes of this opinion, is no different than its 1933 version, and we need not reconstrue it.

4. For an analysis of the distinction between indemnity policies and liability policies, see 12A Couch on Insurance 2d (Rev Ed) § 44:4.

5. 47 O.S.1981, § 7–600 et seq.

OPALA, V.C.J., concurs in judgment.

WILSON, J., concurs in result.