1999 OK CIV APP 37

**Christopher Shawn CAMPBELL, individually and as parent and next friend of Tatum Leigh Campbell, a minor; and Anna Ruth Donham Campbell, individually, Appellants,**

v.

**AMERICAN INTERNATIONAL GROUP, INC., a foreign corporation; and, AIG Europe S.A., a foreign corporation, Appellees,**

and

**Michael Stephen Muller, Defendant.**

**Nos. 92,029, 92,030.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 16, 1999.

Sidney A. Martin II, Carr & Carr Attorneys, Tulsa, Oklahoma, For Appellants.

Michael E. Smith Holloway, Dobson, Hudson, Bachman, Alden, Jennings & Holloway, Oklahoma City, Oklahoma, For Appellees.

## OPINION

STUBBLEFIELD, P.J.

¶1 These are consolidated appeals from orders of the trial court sustaining defendants' motions to dismiss. The appeals were assigned to the accelerated docket pursuant to Okla. Sup.Ct. R. 1.36(a)(2), 12 O.S. Supp. 1998, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we reverse.

¶2 This action arises out of a one-vehicle automobile accident that occurred in Bavaria, Germany, on April 28, 1996. Christopher Campbell was a passenger in a vehicle driven by Michael Muller. Muller lost control of the vehicle and, as a result, Campbell suffered injuries. At the time of the accident, both men were United States soldiers stationed in Germany. Muller's automobile liability insurance was issued in Germany by AIG Europe S.A. (AIG Europe), a French corporation.

### Trial Court Proceedings

¶3 After both men returned to the United States, Campbell, a Louisiana resident, filed this action in Oklahoma naming Muller, an Oklahoma resident, and his liability insurance carrier as defendants. Consortium-re-

lated claims also were made by Campbell's wife and daughter. Plaintiffs sought damages for personal injuries, alleging that Muller drove recklessly and was intoxicated. They also alleged that, under applicable German law, AIG Europe was jointly liable with its insured, Muller, and was "amenable to suit in a direct action."

¶4 Plaintiffs attempted service by mailing a copy of the summons and petition by certified mail to AIG Europe at the New York City headquarters of its parent corporation, American International Group, Inc. (AIG). Later, Plaintiffs would add AIG as a party defendant, alleging:

> AIG Europe S.A. is a wholly owned subsidiary of American International Group, Inc., a Delaware corporation headquartered in New York, and controlled by the latter through American International Underwriters [AIU], a division of American International Group, Inc., which manages its Foreign General Group of member companies. AIG Europe S.A. is an agent or instrumentality of American International Group, Inc., through which American International Group, Inc., does business in Germany, including sale of the policy issued to [Defendant] Muller.

Plaintiff would also add counts for breach of the covenant of good faith and fair dealing against both these defendants.

¶5 A considerable dispute developed over service, which we need not delineate herein. Ultimately, each corporate defendant filed a motion to dismiss. AIG based its motion on lack of in personam jurisdiction, improper venue and Plaintiffs' failure to state a cognizable cause of action. In its supporting brief, AIG asserted that it was a "holding company which has as one of its subsidiaries, AIG Europe S.A.," and that it did not (1) issue the insurance policy in question, or (2) have sufficient minimum contacts with Oklahoma to justify exercise of in personam jurisdiction. It further asserted that the action was not properly brought against it, or AIG Europe, because Oklahoma recognizes neither direct

actions by an injured party against a tortfeasor's liability insurer nor actions for bad faith brought by strangers to an insurance contract. According to AIG, Oklahoma had no interest in recognizing and giving effect to German law to afford a Louisiana resident benefits that an Oklahoma resident could not obtain, and allowing Plaintiffs to bring a direct action and claim for bad faith would offend the public policy of this state. AIG attached evidentiary materials to its brief, which included copies of the German insurance policy and endorsements.

¶6 Plaintiffs objected to AIG's motion to dismiss, asserting that a substantial controversy existed as to several material facts, including whether Plaintiffs were third-party beneficiaries under the terms of the policy and thus entitled to bring a direct action, whether AIG Europe was a "mere instrumentality" of AIG and whether AIG Europe specifically had contracted to assume the obligation of defending its insured in foreign jurisdictions and had waived objections to jurisdiction and venue. Plaintiffs attached exhibits including copies of pages from AIG's and AIU's "web sites," which they claimed tended to demonstrate that corporate distinctions should be disregarded and the two entities treated as one. The trial court sustained AIG's motion to dismiss, although no formal order was entered at the time.

¶7 AIG Europe then filed its motion to dismiss, upon substantially the same grounds as those urged by AIG. In fact, it did not file a supporting brief but adopted the motion and brief of AIG, incorporating those "by reference." Plaintiffs filed a substantial response, but the trial court entered a "Final Order" in favor of each corporate defendant, sustaining each defendant's motion to dismiss "with prejudice." The orders are not detailed and do not specify any grounds for the dismissals. Plaintiffs appeal both orders.[1]

### Waiver of Defenses

¶8 We first address Plaintiffs' claim of waiver of defenses by AIG Europe. Plain-

---

1. In its separate orders, the trial court made the requisite findings under 12 O.S. Supp.1997 § 994, that the orders were to be considered final and that there was no just reason for delay,

thus allowing the appeals to go forward. The appeals have been consolidated pursuant to order of the Supreme Court.

tiffs maintain that the trial court erred in dismissing AIG Europe from the action because the insurer failed to preserve defenses of lack of personal jurisdiction, failure to state a claim and improper venue by omitting such defenses from its original motion. Plaintiffs' argument is based on their assertion that the first motion raised only the issue of insufficient service of process. We do not agree with this contention.

■ ¶ 9 AIG Europe's first appearance was denominated a "Special Appearance" and not a general one. By making such a qualified appearance, it reserved the right to later assert additional defenses. *Young v. Walton,* 1991 OK 20, ¶ 4, 807 P.2d 248, 249–50; *First Texas Savings Ass'n v. Bernsen,* 1996 OK CIV APP 24, ¶ 7, 921 P.2d 1293, 1296. Accordingly, AIG Europe did not waive any defenses and was not precluded from asserting, in a subsequent motion, the defenses of lack of personal jurisdiction, improper venue or failure to state a claim.

### Issues Raised on Appeal

¶ 10 Plaintiffs' remaining allegations of error have more merit. Regarding the trial court's dismissal of AIG Europe, Plaintiffs claim: (1) The AIG Europe policy sold to Defendant Muller in Germany incorporates German insurance law by reference to define the rights and duties of the parties; (2) Under German law, an injured party is recognized as a third-party beneficiary with standing to sue a liability carrier in a direct action; (3) Under German law, the liability insurer is jointly and severally liable for any damages within policy limits, which must be paid directly to the injured party; (4) Oklahoma's choice of law rule will enforce German law; (5) Oklahoma law recognizes a cause of action for bad faith by a third-party beneficiary; and, (6) Under the terms of the policy, AIG Europe assumed a duty to defend Muller in his legal residence of Oklahoma, thus waiving objections to personal jurisdiction and venue, and may be sued as a codefendant with Muller, who made no objection to venue. Therefore, according to Plaintiffs, they may maintain an action for damages against AIG Europe, in Oklahoma, including a claim for bad faith.

¶ 11 As to AIG, Plaintiffs claim that the trial court erred in granting summary judgment dismissing AIG because: (1) AIG Europe is managed by American International Underwriters (AIU), a division of AIG, which is handling the claim and controlling the litigation; (2) AIG Europe's initial appearance was through Cyrial Bassett, Jr., an adjustor employed by AIU North America, Inc. (AIU); (3) AIG Europe is a mere agent or instrumentality of AIG; (4) AIG sells insurance in Oklahoma through various wholly owned subsidiaries, which also are mere agents or instrumentalities of the parent company, AIG; (5) Corporate identities may be disregarded herein and the parent company made to answer for the torts of its subsidiary; and, (6) AIG is liable for the failure to pay Plaintiffs benefits due directly to them from AIG Europe through the mishandling of the claim by its AIU division.

### Standard of Review

¶ 12 The grounds for dismissal asserted by both corporate defendants included failure to state a claim upon which relief can be granted. However, because matters outside the pleadings were presented to and not excluded by the trial court, the motions must be treated as ones for summary judgment. 12 O.S.1991 § 2012(B). Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Oliver v. Farmers Ins. Group of Companies,* 1997 OK 71, 941 P.2d 985. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is de novo. *Kirkpatrick v. Chrysler Corp.,* 1996 OK 136, ¶ 2, 920 P.2d 122, 124. This court will view all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion. *Oliver,* 1997 OK 71 at ¶ 6, 941 P.2d at 987. If the uncontroverted facts support legitimate inferences favoring well-pleaded theory of the party against whom the judgment is granted or the judgment is contrary to substantive law, it will be reversed. *Hargrave v.*

*Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, 792 P.2d 50.

### *In Personam Jurisdiction and Venue*

¶ 13 As noted above, the trial court's orders dismissing each defendant were not based on any specific ground. If the trial court's decision was based on a finding that the action should be heard in another forum or that it was neither reasonable nor fair to require defendants to conduct a defense in Oklahoma, the record before us leads us to conclude that such a decision was in error.

 ¶ 14 In an endorsement entitled "FOREIGN AUTOMOBILE—POLICY PERIOD, TERRITORY, PURPOSE OF USE AND JURISDICTION," the policy issued to Muller provides:

**Jurisdiction**

The company shall have the right and duty to defend any lawsuit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the lawsuit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or lawsuit as it deems expedient, provided that the claim or lawsuit is not brought in the following countries or territories:

(a) any jurisdiction in which this policy may be prohibited by statute, regulation or local laws, or

(b) Cuba, Iran, Iraq, Libya, North Korea or any country or territory for which a United States of America Governmental embargo, sanction or ban is in effect.

This endorsement certainly can be construed, as Plaintiffs urge, as obligating AIG Europe to defend Muller in a suit brought in Oklahoma, and to defend itself in Oklahoma, because, under the German law incorporated into the policy, it may be sued directly by a party having a claim against the insured.

¶ 15 Furthermore, Oklahoma's long-arm statute, 12 O.S.1991 § 2004(F), provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." In *Hough v. Leonard*, 1993 OK 112, ¶ 7, 867 P.2d 438, 442 (footnotes omitted), the court stated that section 2004(F) "is a codification of our holding in *Fields v. Volkswagen of America, Inc.*, [1976 OK 106, ¶ 6,] 555 P.2d 48, 52, that the intent of the Oklahoma long-arm statute, is to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the Oklahoma Constitution and by the due process clause of the United States Constitution."

 ¶ 16 The evidentiary materials filed of record, including materials taken from AIG's web site, indicate that AIU's Personal Lines Division, which includes AIG Europe, aggressively marketed policies, such as the German one issued to Muller, exclusively to non-Germans—U.S. and Canadian citizens abroad, including "Tourists," "Expatriates," and "Government/Military Employees." AIG described its targeted customers as "transnational" and its materials boast that AIU offers a "Worldwide Claim Service" through a "Global Support Network" and regional support networks including western, central and eastern Europe. The web site materials also state:

This regional claim network is complemented by top technicians in AIU's New York Claim Management Department. Our New York facility acts as a high level support team *assisting, supervising and auditing in-country claim offices.* (Emphasis added.)

¶ 17 Plaintiffs assert that AIU and its affiliates, in selling short-term automobile liability coverage to American servicemen temporarily stationed overseas, could reasonably anticipate litigation in an insured's home state: "Obviously … Muller could reasonably be expected to return to the United States even though his claim had not been settled." Plaintiffs further assert that AIU and its affiliates "necessarily subject themselves to suit in American courts when claims are denied, and in particular subject themselves to suit in the serviceman's home state when, as here, the claim is not settled before the serviceman is discharged and returns home." Plaintiffs also point out that the policy was issued to *Lisa or* Michael Muller, and that Muller's wife, Lisa, had continuously resided in Oklahoma.

¶ 18 We agree that the record demonstrates that defendants had "fair warning" that their activities might subject them to suit here. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under this record, exercise of in personam jurisdiction over either of the defendants by an Oklahoma court would not "offend the traditional notions of substantial justice and fair play." *Hough,* 1993 OK 112 at ¶ 7, 867 P.2d at 442–43. Moreover, venue is proper in Oklahoma County pursuant to 12 O.S.1991 § 187. We find Defendants' *forum non conveniens* argument unpersuasive.

### Direct Action Against AIG Europe

¶ 19 We now address the merits of Plaintiffs' claims against AIG Europe. The policy declarations sheet provides that the rights and obligations of the parties to the contract are governed by "this policy, by the general conditions for motor vehicle insurance in Germany (AKB), by the German legal provisions and by special conditions, if any." Plaintiffs attached excerpts from German insurance laws to their briefs filed below. As does Oklahoma, Germany has laws making automobile liability insurance compulsory. However, unlike Oklahoma law, German law apparently authorizes injured parties to prosecute claims for compensation directly against the liability insurer and provides that the insurer and the responsible/negligent policy holder are jointly and severally liable.[2] AIG Europe does not dispute this provision of German law but argued below that these provisions are contrary to the public policy of Oklahoma and should not be enforced by the courts of this state. Under the facts of this case, we do not agree that in this instance a joint action against an insurer and its insured tortfeasor is "repugnant" to Oklahoma law.

¶ 20 Although Oklahoma does not have a general direct action statute, there is a statute, 47 O.S.1991 § 169, which the Oklahoma Supreme Court has determined allows a joint action against a tortfeasor motor carrier and its insurer. In *Daigle v. Hamilton,* 1989 OK

137, 782 P.2d 1379, the court addressed certain instances where an injured party may maintain a direct action against a tortfeasor's insurance company. The court noted that the language of section 169 created a "direct liability of the insurance company to the injured person." *Id.* at ¶ 9, 782 P.2d at 1381, citing *Jacobsen v. Howard,* 164 Okla. 88, 90, 23 P.2d 185, 187 (1933). The court in *Daigle* also noted that joint actions have also been allowed under the same theory where a city ordinance required insurance bonds for taxicab companies and bus companies, much like section 169. 1989 OK 137 at ¶ 9, 782 P.2d at 1381. However, the *Daigle* court stated:

> We have never before recognized the right of a plaintiff to bring a direct action against the insurer of an alleged tortfeasor *absent statutory edict.*

*Id.* at ¶ 18, 782 P.2d at 1383 (emphasis added).

¶ 21 Herein, the applicable German law seems just such a statutory edict. Therefore, we see nothing repugnant to Oklahoma law in recognizing and enforcing Germany's "statutory edict"—that automobile liability insurers are jointly and severally liable with tortfeasors and may be sued by injured parties. Nor do we see any unfairness in allowing Plaintiffs to pursue their action where the tortfeasor resides.

### AIG's Potential Liability

¶ 22 As noted above, there is substantial evidentiary material in the record tending to refute AIG's assertion that it is an entity isolated from AIG Europe and this occurrence. Because we have found that the action may proceed directly against AIG Europe, it may proceed against AIG as the alleged alter ego of that corporation.

### Bad Faith

¶ 23 Plaintiffs asserted below that, by virtue of German law, they are third-party beneficiaries of Muller's insurance contract. Indeed, the record suggests that they are.

2. The materials submitted by Plaintiffs show that Germany has a "Law Concerning Obligatory Insurance for Motor Vehicle Keepers," known as "PflVG," and a "Law Concerning Liability Insur-ance for Foreign Motor Vehicles," known as "AuslPflVG." Both laws contain provisions addressing "Third person's rights against Insurer."

Thus, they claim they are entitled to bring an action for bad faith. Relying on *Allstate Insurance Company v. Amick*, 1984 OK 15, 680 P.2d 362, and other cases,[3] Defendants maintain that to allow Plaintiffs' claim for bad faith to proceed would offend the public policy of this state and give benefits to a non-resident that residents of this state could not obtain. However, Defendants' reliance on *Amick* and the other cited cases is misplaced because in those cases the parties attempting to sue for bad faith were strangers to the insurance contract—they were merely third-party claimants, not third-party beneficiaries.

¶ 24 "A third-party beneficiary contract exists if the proceeds of an insurance policy are payable to third persons." *Roach v. Atlas Life Ins. Co.*, 1989 OK 27, ¶ 8, 769 P.2d 158, 161, citing *Zahn v. General Ins. Co.*, 1980 OK 79, ¶ 13, 611 P.2d 645, 647; *Christian v. Metropolitan Life Ins. Co.*, 1977 OK 132, ¶ 15, 566 P.2d 445, 448. It is not necessary that third-party benefici-aries be named specifically in contracts, *Keel v. Titan Constr. Corp.*, 1981 OK 148, 639 P.2d 1228, however, it must appear that the contract was expressly made for the benefit of a class of persons to which the party seeking enforcement belongs. *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 1981 OK CIV APP 20, 628 P.2d 1176. *See also* 15 O.S.1991 § 29.

¶ 25 Pursuant to Oklahoma law, "[a]n insurer's implied-in-law duty of good faith and fair dealing extends to all types of insurance companies and insurance policies." *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, ¶ 6, 828 P.2d 431, 432 (footnote omitted). The duty does not extend to every party entitled to payment from insurance proceeds but *does* extend where there is a contractual *or* a statutory relationship between the insurer and the party asserting the bad faith claim. *Id.*, 828 P.2d at 432-33. *Oklahoma law clearly allows third-party beneficiaries to pursue bad faith claims. Id.* at ¶ 10, 828 P.2d at 434-35.

¶ 26 The identified provisions of German law and the subject insurance contract in the record do not appear to offend the public policy of this state. Thus, Oklahoma courts may give effect to those provisions, and the trial court herein erred in its refusal to do so. However, although Oklahoma law would impose a duty of good faith on AIG Europe, there is nothing in the record indicating whether German law implies a duty of good faith and fair dealing. If German law does imply such a good faith duty, then a determination must be made as to whether AIG Europe owed Plaintiffs that duty and whether it acted in bad faith with respect to their claim. Even if German law does not impose a duty of good faith and fair dealing, Plaintiffs' recovery of extracontractual damages against AIG Europe may not be precluded. The law of Oklahoma, Louisiana or New York may be applicable on this issue, depending on which state has the most significant relationship to the occurrence and the parties. *See Brickner v. Gooden*, 1974 OK 91, ¶ 23, 525 P.2d 632, 637. Clearly, issues as to AIG Europe's liability for bad faith remain unresolved.

¶ 27 There are also unresolved issues regarding AIG's liability for bad faith. The record contains evidentiary materials showing that AIU North America, Inc., Personal Lines Claims—a division of AIG—was handling Plaintiffs' claim through Cyrial Bassett, Jr., the Supervisor of Personal Lines at New York Regional Claims. A letter from Bassett to Plaintiffs' attorney discussed arranging an independent medical examination and stated: "[W]e do not have enough information to fully evaluate the case and will not make any offer at this time." Thus, as to the bad faith claim, we again find that the evidence of record contradicts the assertion that AIG is an entity totally isolated from AIG Europe and this occurrence.

¶ 28 In *Oliver v. Farmers Insurance Group of Companies*, 1997 OK 71, 941 P.2d 985, the plaintiff asserted a bad faith insurance claim against four defendants alleged to

---

**3.** Defendants also cited *Daigle; McWhirter v. Fire Ins. Exch., Inc.*, 1994 OK 93, 878 P.2d 1056, and *Gianfillippo v. Northland Cas. Co.*, 1993 OK 125, 861 P.2d 308, to support their assertion that Oklahoma would not recognize a bad faith cause of action in favor of Plaintiffs against the tortfeasor's insurer.

be members of the same insurance group. She purchased her insurance from an agency representing the "Farmers Insurance Group," but her policy actually was written by "Farmers Insurance Company," a subsidiary of "Farmers Insurance Exchange," which was managed by "Farmers Group, Inc." *Id.* at ¶¶ 3–7, 941 P.2d at 986–87. The plaintiff had evidentiary materials showing that Farmers Insurance Group was comprised of property and casualty insurers operating under a common management, subject to a pooling agreement for premiums, expenses and losses, and the "economic reality" was that Farmers Insurance Group was "but one entity" supervised and managed by Farmers Group, Inc. *Id.* at ¶ 4, 941 P.2d at 986.

¶ 29 The supreme court in *Oliver* reversed a summary judgment entered by the trial court in favor of Farmers Group, Inc., and Farmers Insurance Group of Companies, noting that, "[i]f one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law," and that "[t]he question hinges primarily on control." *Id.* at ¶ 8, 941 P.2d at 987. Citing *Frazier v. Bryan Mem'l Hosp. Auth.,* 1989 OK 73, ¶ 17, 775 P.2d 281, 288, the supreme court noted ten factors that may be considered and stated that the issues posed by *Frazier "are questions for a fact finder, and will determine the management company's liability, or lack of it."* *Oliver* at ¶ 11, 941 P.2d at 987 (emphasis added). The court also noted decisions from other jurisdictions holding that entities, such as management companies, which were not "true insurers" could be held liable for bad faith breach of contract. *Id.* at ¶ 10, 941 P.2d at 987.

¶ 30 Applying Oklahoma law, the court in *Wolf v. Prudential Insurance Co.,* 50 F.3d 793 (10th Cir.1995), held that the plan administrator for a self-insured health plan could be subject to the duty of good faith where it had primary control over benefit determinations, assumed the risk of the determinations and assumed the "ordinary insurer role of investigating and servicing claims." *Id.* at 797. The court noted that the plan administrator had the "power, motive and opportunity to act unscrupulously." *Id.* at 798. Here,

the record shows that AIG, through the AIU New York facility, not only handled portions of Plaintiffs' claim, it generally provided "high level support" in claim management by "assisting, supervising and auditing in-country claim offices."

### Conclusion

¶ 31 Defendants proffered several grounds for dismissal, and the trial court entered judgments in their favor, dismissing Plaintiffs' claims with prejudice, without specifying any grounds for its decisions. Having reviewed the record and determining that there are numerous unresolved issues of fact and law, we find the trial court erred in sustaining the motions to dismiss. Accordingly, the judgments of the trial court are reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 32 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BOUDREAU, V.C.J., and REIF, J., concur.

