CLARKSBURG PAPER CO. et al. v.
ROPER et al.

No. 32045. Feb. 26, 1946.

*166 P. 2d 425.*

Clayton B. Pierce, of Oklahoma City, for petitioners.

Kerr, Lambert & Conn, of Ada, for respondents.

OSBORN, J. This is an original proceeding by Clarksburg Paper Company and London Gurantee & Accident Company, petitioners, against James J. Roper, Harvey Lambert, and the State Industrial Commission, to review an award.

Respondent James J. Roper, on April 12, 1943, filed with the State Industrial Commission notice of an injury claimed to have been received by him on September 20, 1942, while employed by Clarksburg Paper Company. Subsequently he filed an amended claim in which the date of the injury is given as September 17, 1942, the nature of the injury being stated as "heart damage and attack." The answer of petitioners denied that Roper had received an accidental injury of a compensable nature arising out of or in the course of his employment. The commission awarded compensation.

The sole contention made by petitioners is that the evidence before the Industrial Commission does not show that Roper's injury was an accidental injury arising out of and in the course of his employment. This necessitates a brief review of the evidence.

It is undisputed that Roper was an employee of petitioner, Clarksburg Paper Company; that he started to work in February, 1941, and that in September, 1942, and for approximately two or two and a half months prior to the time he claims to have been injured, he was working on a corrugating machine in the plant of the paper company. The size or exact nature of the corrugating machine, by which paper is made into pasteboard, is not shown, but according to the testimony of Roper it was a large machine some six feet long, and the paper when passing through the machine went across a row of hot plates. The rolls of paper, before being put into the machine, were placed on iron shafts, which weighed approximately 80 pounds each, the rolls of paper weighing some 200 pounds. A part of Roper's work consisted of lifting these iron shafts and inserting or placing them in the rolls of paper, then helping put the rolls in the machine, and he testified that this had to be done every 15 minutes. He further testified that he did this work all day long, working an average of 60 hours or more per week.

From the testimony of a physician it appears that Roper had a heart attack in 1939, and at that time he had a heart ailment which the physician testified might later develop into rheumatic heart. Roper testified that on September 17, 1942, while lifting one of the iron shafts in order to put it in a roll of paper, he suddenly developed a pain in his chest accompanied by a smothered feeling; that he worked on for a short period until the noon hour and then advised the superintendent that he could not work that afternoon and was going to lay off; that he stayed home that afternoon and the following morning, returning to work at noon on the 18th, working the afternoon of the 18th, all of the 19th, and until nearly noon on the 20th; that during all the time he worked on the 18th, 19th, and

20th of September, his chest pained him and bothered him, and that on the 20th at about noon the pain was so great that he could hardly stand it; that he went back to work awhile that afternoon, but did not do much; that on his way home from work the pain became intense, and by the time he got home it was almost unbearable. His wife called a physician and a short time thereafter he was sent to the hospital. He testified that he was unaware that there was anything wrong with his heart, and that he understood that the attack he had in 1939 was the "flu". He stated that when the pain and smothered feeling struck him on September 17th, he had picked up one of the shafts, and that he had to lay it down a few minutes and rest up and get his breath; that he shafted up the roll of paper and did not do much more before quitting for the day.

From the evidence of the physicians who testified at the various hearings, it appears that Roper's heart was considerably dilated, and the heart muscles badly damaged, and two of the doctors testified that while this was due to some extent to progressive heart trouble, it was undoubtedly accelerated by the type of work in which Roper was engaged, and that the heavy lifting done by him in a hot room was the inciting cause of the breakdown of his heart. Other physicians testified that his heart condition was the result of progressive deterioration due to disease, and that he should not have been engaged in the type of work he was doing at the time he was injured. All agreed that Roper was permanently and totally disabled.

Petitioners contend that the finding of the commission, that the cause of Roper's disability was "an accidental personal injury arising out of and in the course of his employment, towit, a strain aggravating and activating a pre-existing heart condition," is not sustained by the evidence. They assert that there is no evidence that the injury sustained by Roper had an objective origin and that it comes within the rule announced in Armour & Co. v. Worden, 189 Okla. 106, 114 P. 2d 173;

Turner v. Ford, 183 Okla. 567, 83 P. 2d 844; National Biscuit Co. v. Lout, 179 Okla. 259, 65 P. 2d 497, and other similar cases.

The rule is well settled in this state that if there is evidence supporting the finding of the State Industrial Commission that an accidental injury was sustained, the finding of the commission on that point is conclusive and will not be disturbed. Prairie Cotton Oil Co. v. State Industrial Commission, 187 Okla. 378, 102 P. 2d 944; Sinclair-Prairie Oil Co. v. Stevens, 194 Okla. 109, 148 P. 2d 176. We think the evidence sufficient to support the finding of the commission above set forth.

In Carden Mining & Milling Co. v. Yost, 193 Okla. 423, 144 P. 2d 969, the evidence showed that the claimant, Yost, pursuant to his daily duties, was required to climb a chat pile, and that while climbing such chat pile he felt a sudden, sharp pain in his heart. Physicians testified that he was suffering from acute dilation of the heart and that same was caused from the excessive amount of physical exertion in climbing the chat pile. An award was sustained. In that case we quoted the following from Andrews Mining & Milling Co. v. Atkinson, 192 Okla. 322, 135 P. 2d 960:

"We are committed to the rule that the term 'accidental injury' is not to be given a narrow or restricted meaning, but is to receive a broad and liberal construction, with a view of compensating injured employees where disabilities result from compensable personal injuries. . . ."

In Terminal Oil Mill Co. v. Younger, 188 Okla. 316, 108 P. 2d 542, Younger, while shoveling cottonseed with a scoop shovel in the Terminal Company's gin, was seized with a sudden sharp pain in his back. He was performing his usual and customary work, the loaded shovel which he was using weighing from 25 to 35 pounds. It was there contended that there was no unusual strain and that Younger had done nothing different from what he ordinarily did in the performance of his duties.

In that case an award by the commission, holding that he had received an accidental injury, was sustained.

In Lee Drilling Co.v. Ralph, 156 Okla. 140, 9 P. 2d 954; Protho v. Nette, 173 Okla. 114, 46 P. 2d 942; Choctaw Cotton Oil Co. v. Boyd, 162 Okla. 15, 18 P. 2d 859, and in Sinclair-Prairie Oil Co. v. Stevens, supra, we held that where an accidental injury aggravated a pre-existing physical condition or disorder into a state of disability, the injured workman may be awarded compensation for such disability.

We think that the evidence set forth justifies the conclusion that Roper's heart gave way or was injured while he was engaged in lifting the iron shaft on September 17th, and that under the authorities above cited this was an accidental injury which aggravated a theretofore existing heart condition to such an extent that he was permanently disabled. The fact that it occurred while he was engaged in doing the same kind of work that he had theretofore been doing does not negative the accidental nature of the injury. As said in Andrews Mining & Milling Co. v. Atkinson, supra:

"An 'accident' is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term 'accidental injuries', the substantive 'injuries' expresses the notion of a thing or event, that is, the wrong or damage done to the person, while 'accident' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening, or coming by chance or without design, taking place unexpectedly or unintentionally. . . ."

Affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, CORN, DAVISON, and ARNOLD, JJ., concur.