[No. 55319–0. En Banc. October 31, 1989.]

SCOTT WOLF, *Appellant,* v. SCOTT WETZEL SERVICES, INC., *Respondent.*

*Norman W. Cohen* and *Cohen & Keith–Miller, P.S.,* for appellant.

*Lane Powell Moss & Miller,* by *Ralph C. Pond,* for respondent.

*Bryan P. Harnetiaux, Gary N. Bloom, Michael J. Pontarolo,* and *Wayne Lieb* on behalf of Washington State Trial Lawyers Association, amici curiae for appellant.

*Tim Donaldson* and *Constance Gould* on behalf of Washington Defense Trial Lawyers; *Craig A. Staples* on behalf of Washington Self–Insurers Association, amici curiae for respondent.

ANDERSEN, J.—

### FACTS OF CASE

In this case we are presented with the question of whether the Industrial Insurance Act bars an employee from bringing a civil action, outside the workers' compensation system, against the claims administrator of a self–insured employer for wrongful delay or termination of workers' compensation benefits.

The parties have stipulated to the following facts.

On April 27, 1979, Scott Wolf injured his lower back while working as a truck driver for St. Regis Lumber Company in Marysville. While driving his truck near Mt. Vernon, he noticed that his load of lumber had shifted. He injured his lower back while attempting to lift a 4x16x22 timber back into place.

Mr. Wolf's claim was administered by Scott Wetzel Services, Inc. Scott Wetzel Services contracted with St. Regis to manage its worker's compensation claims, for which St. Regis is self-insured pursuant to RCW Chapter 51.14. From the date of his injury until November 7, 1979, Mr. Wolf received time loss compensation and payment of medical bills from St. Regis. On November 7, 1979, Gary Ladd of Scott Wetzel Services terminated time loss compensation to Mr. Wolf based on a report from Wolf's attending physician, Dr. Charles Anderson, that Mr. Wolf was capable of gainful employment.

In January 1980, Mr. Wolf and his new treating physician, Dr. Richard McCollum, asked Scott Wetzel Services to pay for psychiatric treatment, suggesting that his back injury may have contributed to psychological problems. At that time, Mr. Ladd denied this request. On February 14, 1980, Mr. Ladd recommended to the Department of Labor & Industries that the claim be closed. The Department closed the claim by order dated that same day, February 14, 1980, with time loss compensation as paid and a permanent partial disability award for five percent of the maximum for unspecified disabilities. This was for low back injuries only and did not contemplate any award for psychological impairments.

On appeal, the Board of Industrial Insurance Appeals reversed the Department by order dated June 25, 1980, re-opening the claim for all purposes, including psychiatric care. Since that time, Scott Wetzel Services has paid for Mr. Wolf's visits with his psychiatrist, Dr. Jules Sicotte, pursuant to the Board's order. At this time, Mr. Wolf's worker's compensation claim is still open.

Mr. Wolf filed the present lawsuit [in Superior Court] in November 1982, alleging that the initial refusal by Scott Wetzel Services to pay for psychiatric care constitutes bad faith administration of his worker's compensation claim. The specific allegation in the complaint is that "within three years last past, defendant has, by many words, acts and deeds (of omission as well as commission), tortiously withheld and/or delayed plaintiff's workmen's compensation benefits proximately resulting in great injury to plaintiff . . . ."

Mr. Wolf's claims in this lawsuit are based only on the initial refusal to pay for psychiatric care and what Mr. Wolf believes

was premature claim closure, and not on any other alleged conduct.

Scott Wetzel Services, Inc., which administered the self–insurer's workers' compensation claims (and which was the defendant below and is the respondent in this court), moved for summary judgment in the trial court. The motion was based on its claim that exclusive subject matter jurisdiction over disputes of this kind is vested in the Department of Labor and Industries. The Superior Court granted the motion and dismissed Mr. Wolf's claims for lack of subject matter jurisdiction. Mr. Wolf then sought direct review in this court. We agreed and retained the case for decision.[1]

One principal issue is presented.

## ISSUE

Does the Industrial Insurance Act bar an employee from bringing a civil action against a company, which was hired by a self–insured employer to administer workers' compensation claims, for wrongful delay or termination of benefits?

## DECISION

CONCLUSION. The Industrial Insurance Act expressly provides a remedy within the workers' compensation system for wrongful delay or termination of workers' compensation benefits; that is the exclusive remedy for any such wrongful delay or termination.

It has long been recognized that the Industrial Insurance Act (IIA) (RCW Title 51) reflects a quid pro quo compromise between employees and employers.[2] Under the IIA, the employer pays some claims for which it would not be liable under the common law in exchange for limited

---

[1]RAP 4.2.

[2]*McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 816, 759 P.2d 351 (1988); *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 590, 158 P. 256 (1916).

liability.[3] The employee, on the other hand, gives up common law actions and remedies in exchange for sure and certain relief.[4] As enacted by the Legislature, the IIA accomplishes this quid pro quo compromise through the following exclusive remedy provisions:

> The state of Washington, . . . exercising herein its police and sovereign power, declares that *all phases of the premises are withdrawn from private controversy,* and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end *all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.*

(Italics ours.) RCW 51.04.010 (part).

> Each worker injured in the course of his or her employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, *such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever:* . . .

(Italics ours.) RCW 51.32.010 (part).

Mr. Wolf contends in effect, however, that a civil action for wrongful delay or termination of workers' compensation benefits is not one of the actions abolished by these exclusive remedy provisions. Thus, according to his view, he should be able to maintain the present civil action in the Superior Court, quite apart from the statutory workers' compensation system. We disagree.

Several courts in other jurisdictions have addressed the issue of whether a civil cause of action lies for wrongful delay or termination of workers' compensation benefits.[5]

---

[3] *McCarthy,* at 816; *Stertz,* at 590.

[4] *McCarthy,* at 816; *Stertz,* at 590–91.

[5] *See* 2A A. Larson, *Workmen's Compensation* § 68.34(c) (1988); Annot., *Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal To Make Payments Due,* 8 A.L.R.4th 902 (1981).

According to Professor Arthur Larson, a leading authority on workers' compensation law, and one whose teachings we have often quoted with approval, "[i]n the *great majority* of these cases, for one reason or another, a cause of action was held *not* to lie." (Italics ours.) 2A A. Larson, *Workmen's Compensation* § 68.34(c), at 13–127 to 13–128 (1988).

Courts have held against the existence of such a cause of action for essentially two reasons. First, they have been persuaded by the policies underlying the exclusive remedy provisions of their state workers' compensation statutes.[6] As Professor Larson explains in this connection:

> The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.

(Footnote omitted.) 2A A. Larson § 68.34(c), at 13–145. Second, courts have been greatly influenced by the fact that workers' compensation statutes typically contain provisions that impose a penalty for wrongful delay or termination of benefits.[7] Courts generally take the view that the presence of such a penalty provision in the workers' compensation statute evinces a legislative intent that the remedy for wrongful delay or termination of benefits remain within the workers' compensation system.[8] Significantly, as will be further discussed in some detail, our IIA contains just such a provision.[9]

Consistent with the foregoing, the Illinois Supreme Court, after exhaustively reviewing the cases on the subject, aptly summarized the reasons for the majority view:

---

[6]*See Robertson v. Travelers Ins. Co.*, 95 Ill. 2d 441, 448, 448 N.E.2d 866 (1983); 2A A. Larson § 68.34(c), at 13–145; Annot., 8 A.L.R.4th 902, § 2.

[7]2A A. Larson § 68.34(c), at 13–145; Annot., 8 A.L.R.4th 902, § 2.

[8]2A A. Larson § 68.34(c), at 13–145.

[9]*See* RCW 51.48.017 (penalty of $500 or 25 percent of amount due assessed for unreasonable delay or refusal to pay benefits).

The rationale of these cases has typically been that the legislature, anticipating that bad faith in delaying payment of benefits would occur on occasion, provided a quick, simple and readily accessible method of resolving disputes over such payments without the proof and defenses incident [to a common law action], the intolerable delay in resolution of a lawsuit, economic waste to all and expense to the worker or the spectre of multiple jurisdictions being engaged in the resolution of the same basic questions with the possibility of conflicting results.

(Citations and internal quotation marks omitted.) *Robertson v. Travelers Ins. Co.*, 95 Ill. 2d 441, 448, 448 N.E.2d 866 (1983).

A *minority* of courts, on the other hand, have permitted a civil cause of action to lie for the wrongful delay or termination of benefits.[10] It has been the reasoning of these courts that the injury at issue does not arise out of the employment relationship, but rather out of the worker's status as a claimant seeking benefits.[11] They thus conclude that the injury complained of does not fall within the purview of the exclusive remedy provisions of the workers' compensation statute.[12]

Our Court of Appeals addressed the issue here presented in *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 747 P.2d 1103 (1987), *review denied*, 110 Wn.2d 1016 (1988); it followed the majority view. In that case, an employee brought an action in the Superior Court against his employer and the company hired by the employer to administer workers' compensation claims, alleging misconduct in the administration of his claim. The Court of Appeals affirmed the trial court's dismissal of the action for lack of subject matter jurisdiction.[13] In so deciding, it held that the IIA immunizes an employer, as well as a claims adjuster acting as an

---

[10]2A A. Larson § 68.34(c), at 13–137 to 13–138.

[11]Annot., 8 A.L.R.4th 902, § 2.

[12]Annot., 8 A.L.R.4th 902, § 2.

[13]*Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 79, 747 P.2d 1103 (1987), *review denied*, 110 Wn.2d 1016 (1988).

employer's agent, from such judicial jurisdiction.[14] The court in *Deeter* recognized an exception to this immunity for conduct constituting the tort of outrage,[15] but concluded that the conduct involved in that case, "although arguably vexatious and irresponsible, did not rise to the level of 'outrageous conduct' . . ." *Deeter*, at 77.

We find the reasons supporting the majority view, as above set forth, to be persuasive; we conclude that *Deeter* was correct on this issue.

Mr. Wolf, however, contends that *Deeter* was wrongly decided. Consistent with the minority view adopted by some courts in other jurisdictions, he argues that the exclusive remedy provisions of the IIA do not apply to actions concerning the administration of a claim because, according to him, these provisions only apply to injuries arising in the course of employment.[16] In this regard, he relies on our recent decision in *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989).

In *Reese*, we were concerned about whether an employee, who has received workers' compensation benefits for a disability, is barred by the exclusive remedy provisions of the IIA from subsequently bringing an employment discrimination action against an employer for refusing to make accommodations for the disability. We there held that such an action was not barred.[17] In reaching that decision, we first emphasized that the IIA applies to physical injuries

---

[14]*Deeter*, at 76.

[15]*Deeter*, at 76.

[16]*See* Annot., 8 A.L.R.4th 902, § 2.

[17]*Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 573–74, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989).

suffered in the workplace.[18] We then concluded that the IIA did not bar the discrimination action because the injury arising from employment discrimination was separate and distinct from the physical injury suffered by the employee in the workplace.[19]

Despite some facial similarity to the present case, *Reese* is clearly distinguishable. As we have already noted, this State's IIA does in fact grant a remedy for wrongful delay or termination of workers' compensation benefits.[20] Specifically, it provides:

> If a self–insurer *unreasonably delays or refuses to pay benefits as they become due* there shall be paid by the self–insurer upon order of the director an additional amount equal to five hundred dollars or twenty–five percent of the amount then due, whichever is greater, which shall accrue for the benefit of the claimant and shall be paid to him with the benefits which may be assessed under this title. The director shall issue an order determining whether there was an unreasonable delay or refusal to pay benefits within thirty days upon the request of the claimant.

(Italics ours.) RCW 51.48.017 (part).[21] The wrongs that can be redressed by this provision are precisely the kind of

---

[18]*Reese*, at 569.

[19]*Reese*, at 574. *See also Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 921, 726 P.2d 434 (1986) (stating in dicta that the IIA does not bar an action for emotional distress resulting from wrongful termination of employment because the injury does not result while the employee is "'acting in the course of employment'").

[20]*See* RCW 51.48.017.

[21]*See also* RCW 51.32.190(6) (director authorized to enact rules to ensure fair and prompt handling of claims); RCW 51.14.095(1)(a) (director authorized to take corrective action against employer for not following proper claims procedures); RCW 51.14.080(3) (director authorized to withdraw certification of self–insurer for unreasonably making it necessary for claimants to resort to proceedings against the employer to obtain compensation). We further observe that legislation was recently unsuccessfully introduced in both houses of the Legislature that would have added a new section to the IIA establishing bad faith administration of a workers' compensation claim as an unfair and deceptive practice and subjecting employers and their representatives to payment of treble damages and attorneys' fees for such conduct. *See* Senate Bill 5607, 51st Legislature (1989); House Bill 1083, 51st Legislature (1989). *See also Legislative Digest and History of Bills* 255–56, 577–78 (ed. 7, 1989).

wrongs alleged to exist in the case before us. It bears emphasis that the parties herein stipulated that "*Mr. Wolf's claims in this lawsuit are based only on the initial refusal to pay for psychiatric care and what Mr. Wolf believes was premature claim closure, and not on any other alleged conduct.*" (Italics ours.) Thus it is clear to us that the detailed statutory penalty provision, set forth above, is directly applicable to the wrongs alleged in this case. As such, this provision strongly evidences a legislative intent that the remedy for such wrongs be handled within the statutory framework of our workers' compensation system.[22] This is in marked contrast to the situation that was before us in the *Reese* case, which involved no comparable provision in the IIA providing a remedy for the wrong of employment discrimination there alleged.[23]

*Reese* is distinguishable on other grounds as well. The claim for wrongful delay and termination of benefits in the present case is more closely related to an underlying injury in the workplace than the employment discrimination claim which was before us in *Reese*.[24] Here, the underlying workplace injury necessarily preceded the claim for wrongful delay or termination of benefits. In *Reese,* however, the occurrence of an injury in the workplace was not a necessary condition to the existence of the employment discrimination claim. "For purposes of the Law Against Discrimination, it does not matter how the handicap arose; only the employer's response to the handicap matters." *Reese,* at 572–73.

The language of the exclusive remedy provisions of the IIA further supports *our distinguishing Reese* in this

---

[22]*See* 2A A. Larson, *Workmen's Compensation* § 68.34(c), at 13–145 (1988). We further note that the record before us reveals no attempt by Mr. Wolf to pursue the remedy available to him under the penalty provision of the IIA.

[23]*See Reese,* at 570–71.

[24]*See Deeter,* at 81–82 (Grosse, J., concurring).

manner. The exclusive remedy provisions purport to withdraw from private controversy *"all phases of the premises"*. (Italics ours.) RCW 51.04.010. It is, therefore, appropriate that we consider an action such as this one, which concerns the administration of a claim, as involving one of the "phases of the premises" so excluded.[25]

Accordingly, we join the substantial majority of courts that have addressed the question presented in this case and hold that the IIA bars an employee from bringing a civil action for wrongful delay or termination of workers' compensation benefits.

Mr. Wolf further argues, however, that the exclusive remedy provisions of the IIA apply only to an employer, not to a company hired by the employer to administer workers' compensation claims. Thus, as his argument goes, he should not be barred by the IIA from bringing a civil action against Scott Wetzel Services, Inc., the claims administrator hired by his employer. This argument lacks merit. It is true that the exclusive remedy provisions of the IIA appear to be directed to actions against the employer.[26] It is also true that the IIA allows actions to be brought against "a third person, not in a worker's same employ". RCW 51.24.030(1). However, as Judge Grosse of the Court of Appeals responded to a similar argument in his concurring opinion in *Deeter*, "[t]o permit a right of action against the claims adjuster merely because it is a 'third party' would vitiate the policy of [the] IIA." *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 84, 747 P.2d 1103 (1987) (Grosse, J., concurring), *review denied*, 110 Wn.2d 1016 (1988).

Professor Larson has likewise rejected the argument now raised by Mr. Wolf, referring to it as a "superficially plausible distinction [that] will not survive close scrutiny." 2A

---

[25]*See West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976) (the exclusive remedy provisions of the IIA are "of the broadest, most encompassing nature").

[26]*See* RCW 51.04.010, 51.32.010.

A. Larson, *Workmen's Compensation* § 68.34(c), at 13–143 to 13–144 (1988). He reasons:

> The relation with the carrier . . . arises from the compensation act, not from any separate and independent contractual arrangement with the carrier. Thus the basic requirement of exclusiveness is satisfied: the relation of the parties all flows from the rights and obligations created by the act.

2A A. Larson § 68.34(c), at 13–144. At least one court has also considered an insurance carrier in this context to be the "alter ego" of the employer.[27] We conclude, as did New York's highest court in a case involving similar facts, that "[i]nsofar as the insurer is simply acting for the employer, it, too, is protected by the exclusivity of the statutory remedy." *Burlew v. American Mut. Ins. Co.*, 63 N.Y.2d 412, 417, 472 N.E.2d 682, 482 N.Y.S.2d 720 (1984).

In a similar vein, Mr. Wolf also maintains that the provision of the IIA which authorizes the imposition of a penalty for wrongful delay or termination of benefits (quoted above) is inapposite here because it does not on its face apply to a company hired by the employer to administer workers' compensation claims. He points out that this penalty provision refers to the imposition of a penalty based on the actions of a "self–insurer", but makes no reference to a company hired by the employer to administer claims.[28] If the penalty provision of the IIA was indeed inapposite in this case, it would be more difficult for us to conclude that the Legislature intended for the IIA to bar this present action.

This argument, however, fails for the same reason articulated by the concurrence in *Deeter* in response to the argument that the IIA only bars a cause of action against the employer. To refrain from imposing a penalty for wrongful delay or termination of benefits simply because the party responsible therefor was the company hired by

---

[27]*Whitten v. American Mut. Liab. Ins. Co.*, 468 F. Supp. 470, 474 (D.S.C. 1977) (applying South Carolina law), *aff'd mem.*, 594 F.2d 860 (4th Cir. 1979).

[28]*See* RCW 51.48.017.

the employer, rather than the employer itself, would vitiate the policy of the IIA.[29] This we decline to do.

Although we here conclude that the IIA bars a civil action for wrongful delay or termination of benefits, we do not hold that a civil action cannot lie for misconduct in the administration of a workers' compensation claim under any circumstances. The IIA specifically authorizes a civil action to be brought against an employer when the employer injures the employee with the deliberate intention of doing so.[30] We also agree with the Court of Appeals in *Deeter* that the immunity generally afforded an employer by the IIA is lost when the employer's conduct, or the conduct of a company hired by the employer to administer workers' compensation claims, constitutes the tort of outrage.[31] This is because outrageous conduct in the administration of a workers' compensation claim is too tenuous in its relationship to the underlying workplace injury.[32]

The case presently before us, however, does not involve the tort of outrage. As we have emphasized in other decisions on the subject, in order for conduct to constitute the tort of outrage, it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Guffey v.*

---

[29] *See Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 84, 747 P.2d 1103 (1987) (Grosse, J., concurring), *review denied*, 110 Wn.2d 1016 (1988).

[30] "**Action against employer for intentional injury.** If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title." RCW 51.24.020. *See also Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 584, 547 P.2d 856 (1976) (employer must have "specific intent" to injure employee).

[31] *Deeter*, at 76.

[32] *See Deeter*, at 81–82 (Grosse, J., concurring); *Garvin v. Shewbart*, 442 So. 2d 80, 83 (Ala. 1983).

*State,* 103 Wn.2d 144, 146, 690 P.2d 1163 (1984), quoting *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975).[33] As illustrative of what constitutes such conduct, Judge Webster writing for the Court of Appeals in *Deeter* referred to the particularly egregious facts presented in the California case of *Unruh v. Truck Ins. Exch.,* 7 Cal. 3d 616, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972).[34] In *Unruh,* it was alleged that an investigator hired by the insurance carrier befriended the claimant, misrepresenting his true capacity and intentions. Then, during an excursion to Disneyland, the investigator enticed the claimant into crossing a rope bridge and engaging in other physically demanding activities. Unbeknownst to the claimant, another investigator filmed her while she did so. Upon discovering at a subsequent hearing how she had been deceived, the claimant suffered a physical and mental breakdown requiring hospitalization. We agree that such conduct is indeed outrageous under the standard adopted by this court.[35]

The same cannot be said for the conduct involved in the present case. We first note that in order to determine whether a case involves conduct that is outrageous, it is necessary to examine the facts actually alleged to have occurred. For, as Professor Larson has observed,

> It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words "fraudulent, deceitful and intentional" or "intentional infliction of emotional distress" or "outrageous" conduct in his complaint.

---

[33]*See also Rice v. Janovich,* 109 Wn.2d 48, 61, 742 P.2d 1230 (1987) (setting forth elements of tort of outrage).

[34]*See Deeter,* at 76–77.

[35]*See also Young v. Hartford Accident & Indem. Co.,* 303 Md. 182, 492 A.2d 1270 (1985) (insurance carrier alleged to have insisted upon claimant submitting to psychiatric examination with intent of causing claimant to commit suicide).

(Footnotes omitted.) 2A A. Larson § 68.34(c), at 13–145. The facts stipulated to in the present case in no way suggest that the claims administrator for the self-insured employer engaged in conduct that could constitute the tort of outrage. Furthermore, the parties also appear to have stipulated that Mr. Wolf is alleging only "bad faith" in the administration of his workers' compensation claim.[36]

Thus, we conclude that the present case does not involve outrageous conduct and is not, therefore, excepted from the principle that the IIA bars a civil action for wrongful delay or termination of workers' compensation benefits.

Affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

---

[36]We reiterate that the parties have stipulated that "Mr. Wolf filed the present lawsuit in November 1982, alleging that the initial refusal by Scott Wetzel Services to pay for psychiatric care constitutes *bad faith* administration of his worker's compensation claim." (Italics ours.)