Ronald GOODWIN, Appellant,

v.

OLD REPUBLIC INSURANCE
COMPANY, Appellee.

OLD REPUBLIC INSURANCE
COMPANY, Appellant,

v.

Gerard K. DONOVAN, Appellee.

Nos. 66166, 66186.

Supreme Court of Oklahoma.

March 17, 1992.

Ben A. Goff, Oklahoma City, for appellant, Ronald Goodwin.

Arlen E. Fielden, Carol Kessinger–Huhn, Oklahoma City, for appellee/cross-appellant, Old Republic Ins. Co.

Charles F. Alden III, Oklahoma City, for appellee, Gerard K. Donovan.

KAUGER, Justice.

The dispositive issue of first impression presented is whether a workers' compensation insurance company may be subjected to liability in tort for a wilful, malicious and bad faith refusal to pay an employee's workers' compensation award. We assume that a workers' compensation insurance company may be subjected to liability in tort for a wilful, malicious and bad faith

refusal to pay an employee's workers' compensation award, and we hold that the facts of this case do not support an action for bad faith.[1]

## FACTS

On December 15, 1983, the appellant, Ronald Goodwin (Goodwin/employee/claimant), filed a petition in district court alleging that the appellant, Old Republic Insurance Company (Old Republic/insurer), had in bad faith failed to pay a workers' compensation award. Although Goodwin conceded that Old Republic's trial of his claims are not the basis for the bad faith action, he contended that the appeal of the orders, without a likelihood of success, and the delay in payment of the awards once mandate was spread of record, constituted bad faith. Old Republic filed a third party petition naming the appellee, Gerard K. Donovan (Donovan/insurer's attorney/representative), a party to the suit. Donovan had represented Old Republic in the actions before the workers' compensation court.

The award became due and payable on June 3, 1983.[2] On June 8 and again on June 20, Goodwin's attorney in the workers' compensation cause requested payment. Donovan did not notify Old Republic that the award was due and payable until June 20, 1983. The next day, eighteen days after Goodwin's award became due and payable, Old Republic issued Goodwin a check for accrued payments and interest.[3]

On January 21 and 28, 1986, respectively, Donovan and Old Republic filed motions for summary judgment. They argued that: 1) Goodwin's complaints fell within the exclusive jurisdiction of the Workers' Compensation Court; and 2) that the facts presented would not support a cause of action for bad faith refusal to pay an insurance claim. The trial court sustained both motions on March 18, 1986. Goodwin appealed.

## I.

WE ASSUME THAT A WORKERS' COMPENSATION INSURANCE COMPANY MAY BE SUBJECTED TO LIABILITY IN TORT FOR A WILFUL, MALICIOUS AND BAD FAITH REFUSAL TO PAY AN EMPLOYEE'S WORKERS' COMPENSATION AWARD.

■ Goodwin asserts that he may sue the workers' compensation insurance carrier in district court for bad faith refusal to pay his award. The essence of his assertion is that the recovery of a workers' compensation award from his employer is separate and apart from his right to recover on the insurance contract which the employer has purchased for his benefit—that, in effect, he has two distinct causes of action. Old Republic insists that the Workers' Compensation Act provides the exclusive remedy for all injuries arising from the employment relationship, whether direct or indirect. The exclusivity provision, 85 O.S.Supp.1984 § 12, provides in pertinent part:

"The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability *of the employer* ... for such injury, loss of services, or death ..." (Emphasis supplied.)

*It should be noted that the exclusivity provision of the statute relates to the liability of the employer—not that of the insurer.*

An insurer's implied-in-law duty of good faith and fair dealing extends to all types of insurance companies and insurance policies.[4] However, the insurer's duty to deal

---

**1.** Just as the facts presented are insufficient to support a finding of bad faith on the part of the insurer, they will not establish a cause of action for intentional infliction of emotional distress. See, *Wilson v. Still*, 819 P.2d 714, 716 (Okla.1991); *Breeden v. League Serv. Corp.*, 575 P.2d 1374, 1378 (Okla.1978).

**2.** Title 36 O.S.1981 § 619(A)(6).

**3.** In figuring the amount due Goodwin, Old Republic miscalculated the interest. This error was corrected when Old Republic paid additional attorney fees and interest assessed by the Workers' Compensation Court on the motion to commute to a lump sum.

**4.** *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (Okla.1989); *Rodgers v. Tecumseh Bank*, 756

fairly and act in good faith is limited. It does not extend to every party entitled to payment from insurance proceeds. There must be either a contractual or a statutory relationship between the insurer and the party asserting the bad faith claim before the duty arises.[5]

A third-party beneficiary contract exists if the proceeds of an insurance policy are payable to third persons.[6] Since 1910, 15 O.S.1981 § 29 has held that "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."[7] The beneficiary of a workers' compensation insurance contract meets the criteria for assertion of the right, because the Legislature specifically provided in 85 O.S.1981 § 65.3 that workers are third-party beneficiaries of the employer's liability policy with the insurer.[8] It provides:

"Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workers' Compensation Act shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by the Workers' Compensation Act ..."

In *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okl.1978), we recognized the right of an insured to pursue a bad faith cause of action against its insurer and described the rule for imposition of bad faith liability:

"We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought. We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.

We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured."[9]

We acknowledged that casualty insurance carriers may be subject to a bad faith action in *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1978) [disability insurance—36 O.S.1981 § 707(1)]; *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583 (Okla.1981) [fire insurance—36 O.S.1981 § 707(11)]; *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 [aircraft insurance—36 O.S.1981 § 707(11)]; *Roach v. Atlas Life Ins. Co.,* 769 P.2d 158 (Okla.1989) [life insurance—36 O.S.1981 § 707(1)].[10]

P.2d 1223, 1226 (Okla.1988); *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 588 (Okla.1981).

5. *Allstate Ins. Co. v. Amick,* 680 P.2d 362, 364 (Okla.1984); *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 911–12 (Okla.1982).

6. *Zahn v. General Ins. Co.,* 611 P.2d 645, 647 (Okla.1980); *Christian v. Metropolitan Life Ins. Co.,* 566 P.2d 445, 448 (Okla.1977).

7. Title 15 O.S.1981 § 29.

8. We have previously recognized a claimant's statutory right to enforce a workers' compensa-

tion insurance policy between the employer and the insurer. *State Ins. Fund v. Brooks,* 755 P.2d 653, 657 (Okla.1988).

9. We have not found that the loss of an appeal is sufficient in itself to impose liability for bad faith. See discussion, pp. 435–436, infra, and note 19, infra.

10. Certain insurance coverages fall within more than one definition in Title 36. One definition does not exclude the coverage as to any other kind of insurance within the definition of which the coverage likewise reasonably is includable. 36 O.S.1981 § 701.

In *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (Okla.1989), we found that a beneficiary of a life insurance contract met both the contractual and statutory relationship necessary to maintain a cause of action. The party seeking recovery in *Roach* was a named beneficiary under the insurance contract and a third party beneficiary entitled to enforce a contract made for his/her benefit pursuant to 15 O.S.1981 § 29. We affirmed *Christian's* recognition that an insurer's implied-in-law duty of good faith and fair dealing extends to **all** types of insurance companies and insurance policies, and we held that the third party beneficiary could pursue a bad faith claim.

Workers' compensation insurance falls within 36 O.S.1981 § 707's definition of casualty insurance which provides that casualty insurance includes workers' compensation and employers' liability insurance. Workers' compensation insurers are not exempted from provisions of the Oklahoma Insurance Code (Insurance Code), 36 O.S.Supp.1983 § 101 et seq.[11] The Unfair Claims Settlement Practices Act (Claims Practices Act), 36 O.S.Supp.1985 § 1220 provides in § 1222 that no property or casualty insurer shall engage in unfair claim settlement practices, and it defines an unfair claim settlement practice as:

> "... Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear...."[12]

Section 1227 of the Claims Practices Act provides that its provisions:

> "... shall apply specifically to all claims arising under insurance policies providing liability coverage."

By definition **intentional, wilful acts are not within the purview of the Workers' Compensation Act.**[13] Title 85 O.S.Supp. 1988 § 3(7) defines the injuries covered as accidental injuries arising out of and in the course of employment. Neither § 12 nor § 3(7) precludes an intentional tort claim. Goodwin is not attempting to recover for his physical impairment; *he is not seeking to recover from his employer;* but rather, he seeks compensation for injuries because of the insurer's alleged intentional failure to pay his compensation award in a timely manner. Section 12 provides an exclusive remedy for one type of claim—work-related injuries i.e., the liability of the employer. A bad faith claim is separate and apart from the work relationship, and it arises against an insurer only after there has been an award against the employer.

Workers' compensation insurance is purchased by the employer for the benefit of its employees. Failure of a carrier to pay promptly a claim impacts on the employer-employee relationship. The employer purchases workers' compensation insurance to provide care for its employees. Employers as well as employees rely upon the workers' compensation system for protection for on-the-job injuries. The employer, the injured employee and other employees in the workplace expect payment in the event of a job-related injury. Otherwise, morale in the workplace suffers, which impacts productivity. The employee, who by a statute is made a third-party beneficiary to the workers' compensation insurance, is in the same class as an insured and may expect prompt payment of his/her claim unless the insurer in good faith asserts a basis for contesting it. Failure to pay promptly may

---

**11.** Title 36 O.S.Supp.1988 § 110.

**12.** Pursuant to statute, workers' compensation insurers are charged with the duty to deal in good faith. The term "good faith" is not defined by the Claims Practices Act. However, whenever a term is defined in any statute, the definition is applicable to the same word or phrase whenever it occurs. "Good faith" is defined in 25 O.S.1981 § 9:

> "Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence

of all information or belief of facts which would render the transaction unconscientious."

Good faith is the opposite or antitheses of bad faith. *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34 (Iowa 1982); *Tyler v. Grange Ins. Ass'n*, 3 Wash.App. 167, 473 P.2d 193, 197 (1970).

**13.** *Macklanburg–Duncan Co. v. Edwards*, 311 P.2d 250, 253 (Okla.1957); *Clarksburg Paper Co. v. Roper*, 196 Okla. 504, 166 P.2d 425, 427 (1946).

result in the workers' compensation insurer's liability for more than the statutorily set recoveries. Again, we quote from *Christian:*

"Th(e) statutory duty imposed upon insurance companies to pay claims immediately, recognizes that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.

(Threatened and actual bad faith refusals to make payments by an insurance carrier) constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate for all detriment proximately resulting therefrom, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages."

We did not find that the penalty of suspension of the certificate of authority precluded recovery for the bad faith tort in *Christian* nor should it do so here.

It is undisputed that intentional acts are statutorily excluded under the Workers' Compensation Act.[14] It is undisputed that the bad faith refusal to pay an insurance contract under its terms may be an intentional tort.[15] It is undisputed that 15 O.S. 1981 § 29 authorizes a third party benefi-

ciary to enforce the terms of a contract made for the party's benefit. It is indisputable that 85 O.S.1981 § 65.3 declares that insurance coverage is secured for the benefit of the worker and that the worker is the third party beneficiary under the policy. If an employee is injured by an insurer's bad faith-intentional failure to pay benefits under an award, the employee has a common law action in tort under the *Christian* doctrine.

The common law remains in full force in Oklahoma, unless a statute explicitly provides to the contrary.[16] Title 25 O.S.1981 § 29 requires that statutes in derogation of the common law be liberally construed with a view to effecting their objects and to promote justice. This Court may not preclude an injured person from pursuing the remedy of a recognized wrong in the absence of contrary legislative intent.[17] It appears that 85 O.S.Supp.1984 § 12 does not bar an injured employee from maintaining an action against the insurer in district court for bad faith refusal to pay timely a workers' compensation award. Assuming there may be a cause of action for bad faith refusal to pay timely a workers' compensation award, the facts here will not support the bad faith cause of action.[18]

## II.

THE FACTS PRESENTED DO NOT SUPPORT A CAUSE OF ACTION FOR BAD FAITH REFUSAL TO PAY THE

---

**14.** Title 85 O.S.Supp.1990 § 3(7); *Macklanburg–Duncan Co. v. Edwards,* see note 13, supra; *Clarksburg Paper Co. v. Roper,* see note 13, supra.

**15.** *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okla.1977).

**16.** Title 12 O.S.1981 § 2; *Ricks v. Exploration Co.,* 695 P.2d 498, 504 (Okla.1984). The common law system of remedies may continue side by side with a statute that evinces no legislative intent to supplant it. *State Mut. Life Assurance Co. v. Hampton,* 696 P.2d 1027, 1032 (Okla.1985) (Oklahoma's "slayer statute" does not preclude application of the common law rule which allows, in a civil action following an acquittal, the beneficiary's disqualification upon proof of the crime by a preponderance of the evidence.); *Hood v. Hagler,* 606 P.2d 548, 552–53

(Okla.1980), (The "dog bite statute" does not prevent a judgment's reversal for a trial court's failure also to instruct on common law negligence.); *In re Adoption of Graves,* 481 P.2d 136, 138 (Okla.1971) (Uniform Adoption Act did not abrogate the pre-existing, common law right of natural parents to revoke their consent to an adoption for fraud practiced by the adoptive parents.).

**17.** It is undisputed that the bad faith refusal to pay an insurance contract under its terms may be an intentional tort. *Christian v. American Home Assurance Co.,* see note 15, supra. However, it should be noted that *Christian* will not extend to the employer here. Peabody Coal is in a subclass entitled to protection.

**18.** See, *Hinson v. Cameron,* 742 P.2d 549, 554 (Okla.1987).

WORKERS' COMPENSATION BENE-FITS.

■ Although Goodwin concedes that Old Republic's trial of his claims are not the basis for the bad faith action, he contends that the appeal of the orders, without a likelihood of success, and the delay in payment of the awards once mandate was spread of record, constituted bad faith. Old Republic asserts that none of the facts presented are sufficient to sustain a cause of action for bad faith. We agree.

We cannot conclude from the record presented that the proceedings were not brought on a reasonable ground.[19] Without evidentiary support, litigation or appeal alone does not give rise to a bad faith cause of action. Liability for the bad faith refusal to pay a claim may be imposed only if there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the employee's claim.[20] Here, the insurer made an effort to pay the award eighteen days after it became due. Although we do not doubt that the lack of financial assistance caused stress for Goodwin and his marriage, Old Republic's actions fall short of having actionable quality. We assume that a workers' compensation insurance company may be subjected to liability in tort for a wilful, malicious and bad faith refusal to pay an employee's workers' compensation award and hold that the facts of this case do not support an action for bad faith.[21]

AFFIRMED.

OPALA, C.J., and ALMA WILSON, J., concur.

DOOLIN and SUMMERS, JJ., concur specially.

HODGES, V.C.J., and LAVENDER and SIMMS, JJ., concur in result in part II, dissent from part I.

HARGRAVE, J., concurs in part, dissents in part.

DOOLIN, Justice, concurring specially.

I write specially to address the issues of the jurisdiction of the courts in such cases and to expand on the majority's findings as to Goodwin's action for intentional infliction of emotional distress.

Insurer argues the district court did not have jurisdiction to address the issues in this case because the Workers' Compensation Court has exclusive jurisdiction over the matter. This assessment is incorrect. This cause of action, although alleged to arise from the handling of claims under the Workers' Compensation Act, is not for damages resulting from a work-related injury, but for alleged damages resulting from the tort of intentional infliction of emotional distress. The alleged cause of action did not arise until after Goodwin had made his claim and had received all the remedies provided by the Act. After that recovery, and after all proceedings in the Workers' Compensation Court were final, Goodwin sought to recover damages for events which he claims occurred following the final award and which, he alleges, amount to intentional infliction of emotional distress.

Because the district court has jurisdiction to hear causes of action in tort,[1] Goodwin

---

**19.** Tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured. *Christian v. American Home Assurance Co.*, see note 15, supra; Title 85 O.S.1981 § 30. Goodwin's brief in chief contains a quotation from a letter from an insurance adjuster indicating that she did not feel the appeals would result in reversals. However, a copy of the quoted letter does not appear in the record. One who seeks corrective relief is responsible for, and bound by, the contents of the record presented for review. *Snyder v. Smith Welding & Fabrication*, 746 P.2d 168, 171 (Okla.1986).

**20.** *Christian v. American Home Assurance Co.*, see note 15 at 905, supra.

**21.** *Farley v. CNA Ins. Co.*, 576 So.2d 158–59 (Ala.1991); *Wolf v. Scott Wetzel Serv., Inc.*, 113 Wash.2d 665, 782 P.2d 203, 209 (1989); *Unruh v. Truck Ins. Exch.*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 825, 498 P.2d 1063, 1073 (1972); *Bowen v. Aetna Life & Casualty Co.*, 512 So.2d 248, 250 (Fla.Dist. Ct.App.1987). See also, *Denisen v. Milwaukee Mut. Ins. Co.*, 360 N.W.2d 448, 450 (Minn.Ct. App.1985).

**1.** Oklahoma Constitution, Art. 7, § 7, and *Bennett v. City National Bank & Trust Co.*, 549 P.2d 393, 396 (Okl.1975).

was correct in not filing this action in the Workers' Compensation Court, which is a court of limited jurisdiction.[2]

Though correctly filed in the district court this tort action was also correctly subjected to summary adjudication based on the trial court's evaluation of the case as a matter of law. Goodwin asserts he is entitled to damages because insurer filed an appeal of his compensation award with no reasonable anticipation of success, and that prosecuting the appeal without even bothering to file a brief was nothing less than a design by insurer to inflict emotional suffering upon him. I would find that this set of allegations, without more, does not make out the elements of the tort of intentional infliction of emotional distress.

In *Breeden v. League Services Corp.,*[3] this Court adopted the Restatement Second's approach to the tort of intentional infliction of emotional distress.[4] *Breeden* further established the role of courts and of juries in such cases. In the first instance, the court must determine whether defendant's conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."[5]

Where under the facts before the trial court, reasonable persons may differ as to whether the conduct is outrageous, it is for the jury, under proper supervision of the trial court, to determine whether the conduct is so outrageous and extreme as to permit recovery.[6] But in discharge of its duties the trial court must make an initial determination as to whether, as a matter of law, severe emotional distress can be found.[7]

According to Restatement Second, Section 46, the rule permitting recovery only applies where emotional distress has in fact occurred, and where it is severe. Proof of outrageous conduct alone is therefore, not sufficient to allow recovery.[8]

Goodwin has simply not alleged sufficient facts to support submitting the case to a jury for reconsideration. Reasonable minds could not differ that insurer's conduct did not rise to the level of outrageousness needed to prove a cause of action. To hold otherwise might unintentionally endow the claimant's bar in compensation cases with a weapon which might be used to gain unfair advantage in their contests with compensation insurers, and this we do not wish to do.

SUMMERS, Justice, concurring specially.

In *Christian*[1] we recognized the right of an insured to bring an action against its

**2.** 85 O.S.1981, § 1.2. F.

**3.** 575 P.2d 1374 (Okl.1978).

**4.** Section 46, Restatement of Torts (Second), 1965, provides in part:

46. Outrageous Conduct Causing Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
Comment d. to that section provides in part:
... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous!" ...
See *Breeden v. League Services, supra,* at 1376, where this court held trial court's granting summary judgment for defendant-creditor was proper. This, despite the fact that defendant's agent had allegedly harassed debtor by saying to her, "You damned deadbeat. You Goddamed liar. And you are a deadbeat."

**5.** *Id.* at 1377.

**6.** *Id.*

**7.** *Id.*

**8.** For a detailed analysis of the tort of intentional infliction of emotional distress, see *Eddy v. Brown,* 715 P.2d 74 (Okl.1986); *Chandler v. Denton,* 741 P.2d 855 (Okl.1987); *Dean v. Chapman,* 556 P.2d 257 (Okl.1976); and *Munley v. I.S.C. Financial House, Inc.,* 584 P.2d 1336 (Okl.1978).

**1.** *Christian v. American Home Assurance,* 577 P.2d 899 (Okla.1978).

insurer for bad-faith failure to honor an insurance contract. In *Roach*[2] we acknowledged that a named, third party beneficiary to an insurance contract had like recourse for bad-faith behavior on the company's part. In 85 O.S.1981 § 65.3 the legislature decreed that employees covered by the Workers' Compensation Act *are* third party beneficiaries of their employer's workers' compensation insurance contracts. Just as the geometrician knows that the shape of a triangle cannot be changed without altering the length of one or more of its sides, so too these three legal propositions interlock in such a way as to make the majority's assumption unassailable. Only by our disturbing either *Christian* or *Roach*, or by the legislative alteration of § 65.3, can a different result logically be reached.

**2.** *Roach v. Atlas Life Ins. Co.,* 769 P.2d 158   (Okla.1989).